1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

DEAN KENNEDY,                                      NO.  C16-5216-BHS-JPD

9

                              Plaintiff,

10

          v.                                       REPORT AND
                                                   RECOMMENDATION

11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12

                              Defendant.

13

14

          Plaintiff Dean Kennedy appeals the final decision of the Commissioner of the Social

15

Security Administration ("Commissioner") which denied his application for Disability

16

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

17

after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

18

the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

19

                    I.          FACTS AND PROCEDURAL HISTORY

20

          At the time of the administrative hearing, plaintiff was a fifty-four year old man with

21

the equivalent of a high school education, some college courses, and training as a carpenter.

22

Administrative Record ("AR") at 18-19, 21, 203.  His past work experience includes

23

employment as a carpenter, AR at 51-52, 203, and plaintiff was last gainfully employed in

24

2008.  AR at 26.

REPORT AND RECOMMENDATION - 1

On November 19, 2012, plaintiff filed an application for DIB, alleging an onset date of October 20, 2008.  AR at 976.  His date last insured is March 31, 2014, and therefore he must establish that his disability began on or before March 31, 2014 to establish eligibility for benefits between October 20, 2008 and March 31, 2014.  Plaintiff asserts that he is disabled due to a right shoulder injury, lumbar spine degenerative disc disease, pain in his right ankle, and right ulnar neuropathy.  Dkt. 12 at 2.

The Commissioner denied plaintiff's claim initially and on reconsideration.  Plaintiff requested a hearing, which took place on September 11, 2014.  AR at 1-62.  On October 9, 2014, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 90-109.  Plaintiff's request for review was denied by the Appeals Council on January 22, 2016, AR at 115-18, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On March 22, 2016, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

## II.  JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

REPORT AND RECOMMENDATION - 2

(9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Kennedy bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.       DECISION BELOW

On October 9, 2014, the ALJ issued a decision finding the following:

1.    The claimant last met the insured status requirements of the Social Security Act on March 31, 2014.

2.    The claimant did not engaged in substantial gainful activity during the period from his alleged onset date of October 20, 2008 through the date last insured of March 31, 2014.

3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, right shoulder impingement, right ulnar neuropathy, and hypertension.

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could perform occasional overhead movement on the right.  He could not climb ropes, ladders, or scaffolds.

6.    Through the date last insured, the claimant was unable to perform any past relevant work.

7.    The claimant was born on XXXXX, 1960 and was 53 years old, which is defined as a younger individual age 18-49, on the date last insured.

The claimant subsequently changed age category to closely approaching advanced age.[2]

8.   The claimant has at least a high school education and is able to communicate in English.

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from October 20, 2008, the alleged onset date, through March 31, 2014, the date last insured.

AR at 95-109.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.   Did the ALJ err by failing to acknowledge plaintiff's pain disorder diagnosis at step two?

2.   Did the ALJ err by rejecting the opinion of treating physician Fernando Proano, M.D.?

3.   Did the ALJ err in evaluating plaintiff's credibility?

Dkt. 12 at 1; Dkt. 15 at 1-2.

## VII.   DISCUSSION

### A.   The ALJ Erred at Step Two

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work

---

[2]   The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§

404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not

severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security

Ruling (SSR) 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of

groundless claims."  *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

To establish the existence of a medically determinable impairment, the claimant must

provide medical evidence consisting of "signs – the results of 'medically acceptable clinical

diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or

description of his physical or mental impairment.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th

Cir. 2005).  A claimant's own statement of symptoms alone is *not* enough to establish a

medically determinable impairment.  *See* 20 C.F.R. §§ 404.1508, 416.908.

Examining psychologist Michael Regets, Ph.D. conducted a vocational evaluation for

DSHS in January 2010.  Dr. Regets diagnosed plaintiff with a "Pain Disorder Associated with

Both Psychological Factors and a General Medical Condition."  AR at 253-61, 404-13.  Dr.

Regets further explained his "diagnosis of pain disorder with psychological and physiological

components" as a finding that plaintiff "appears to be in that phase of disability perception

where there is a decreased expectancy of improvement, increased dependency, and increased

defensiveness and anger.  Cognitively, patients with this profile have oscillating angry

projections."  AR at 260.  Specifically, such patients "may exhibit hostile attitudes toward

others accompanied by perceptions of injustice and a desire for retribution.  Alternatively, they

may also turn their anger inward in the form of depression."  AR at 260.  Dr. Regets opined

that plaintiff "feels disappointed and devitalized, and he does not think he has the energy

needed to regulate his emotions or to seek solutions to his problems.  He worries over

1   everything.  He has chronic sleep disturbance," and "his emotional response appears to have

2   become a barrier and is likely retarding recovery despite medical efforts."  AR at 260.  Dr.

3   Regets opined that if plaintiff "is going to become involved in a vocational plan to develop a

4   new skill set he is going to need some ongoing emotional and cognitive support to maintain his

5   motivation . . . if he is left on his own, to keep his motivation going, it will exacerbate the pain

6   disorder resulting in further functional disability."  AR at 260.  Dr. Regets recommended that

7   plaintiff be "referred to a psychiatric practitioner for medical evaluation and preferably a

8   psychologist with expertise in cognitive behavioral therapy concurrent with plan

9   development."  AR at 260-61.

10          At step two, the ALJ found that plaintiff's severe impairments include degenerative

11  disc disease, right shoulder impingement, right ulnar neuropathy, and hypertension.  AR at 95.

12  The ALJ found that although the record contains references to mental health symptoms, the

13  record "does not show that any psychological impairment resulted in significant limitations."

14  AR at 96.  The ALJ summarized Dr. Regets' vocational evaluation, but did not specifically

15  discuss or acknowledge Dr. Regets' pain disorder diagnosis at step two, or elsewhere in the

16  decision.  Rather, the ALJ stated that plaintiff "did not report any significant mental health

17  symptoms" and "demonstrated good interpersonal skills."  AR at 96.  The ALJ then

18  summarized plaintiff's performance on several mental status evaluations from 2010 through

19  2014, including the fact that plaintiff "reported some depression to his primary care physician

20  that was attributed to stressors" in February 2010, but "the record does not thereafter document

21  depressive symptoms."  AR at 96.  Similarly, the ALJ noted that in February 2014, "the

22  claimant reported some anxiety, but mental status examination findings were entirely normal

23  including normal mood and affect, intact concentration, and normal memory."  AR at 96.  The

24  ALJ noted that in April 2014, "the claimant's primary care physician prescribed Valium

despite continued normal mental status examination findings," and in July 2014 "the claimant said that he did not take the medication."  AR at 96.  As a result, the ALJ found that "the treatment records related to mental health symptoms are therefore minimal and fail to document any significant and persistent symptoms or functional limitations."  AR at 96.

Plaintiff contends that the ALJ erred by excluding the pain disorder diagnosis of Dr. Regets as a severe impairment at step two, and in fact, failing to acknowledge this diagnosis altogether.  Dkt. 12 at 4-5.  Plaintiff contends that "given that the diagnosis of a pain disorder may explain the degree of limitation Plaintiff experiences from pain, and may result in a more significantly limited [RFC]," this case should be remanded for further consideration of the pain disorder diagnosis.  *Id*. at 6.  Plaintiff cites to the DSM-IV, and contends that a pain disorder diagnosis is significant because "one of the diagnostic criteria of this condition is that psychological factors are judged to have an important role in the onset, severity, exacerbation, or maintenance of the pain."  *Id*. at 4 (citing the American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders Text Revision, p. 503 (4th ed. 1994)).  Plaintiff argues that this error is harmful because the primary issue in this case is "the degree of limitation Plaintiff experiences because of pain in his right shoulder and arm, ankle and low back."  *Id*. Although the ALJ found that plaintiff's physical impairments could reasonably be expected to cause some pain, he discounted plaintiff's credibility on the grounds that the objective medical evidence failed to provide strong support for the extent of limitations alleged by plaintiff due to his pain.  *Id*. at 5 (citing AR at 98-102).  Plaintiff asserts that the pain disorder diagnosis undermines the ALJ's conclusions.

The Commissioner responds that plaintiff did not specifically allege disability due to a pain disorder in his Adult Disability Report, and "it is reasonable for an ALJ to assume that a claimant is not impaired by a condition that he does not allege impairs him."  Dkt. 15 at 2

1    (citing AR at 202, 225).  Moreover, the Commissioner alleges that the medical evidence in this

2    case does not support a finding that plaintiff's pain disorder caused more than minimal

3    restriction in his ability to function or otherwise complete work-related activities.  Dkt. 15 at 2.

4    The Commissioner asserts that a "mere diagnosis of an impairment, without more, does not

5    establish that the impairment is severe or disabling."  *Id*. at 3.  The Commissioner further

6    points out that Dr. Regents assigned a GAF score of 60-70, which indicates only mild

7    symptoms or limitations, and the ALJ addressed the other limitations described in Dr. Regent's

8    report.  *Id.* (citing AR at 96, 410).[3]  Finally, the Commissioner asserts that "it is irrelevant

9    whether the ALJ found this impairment severe or non-severe, because he did not deny

10   Plaintiff's claim at step two and the RFC finding analyzed all of plaintiff's impairments in

11   combination."  *Id*. at 3 (citing *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)).

12          The Court finds that the ALJ erred by failing to acknowledge plaintiff's diagnosis of a

13   "Pain Disorder Associated with Both Psychological Factors and a General Medical Condition"

14   at step two.  The DSM–IV–TR recognizes three subtypes of pain disorder: pain disorder

15   associated with psychological factors (307.80); pain disorder associated with both

16   psychological factors and a general medical condition (307.89); and pain disorder associated

17   with a general medical condition—only the latter of which is not considered a mental disorder

18   and is used to facilitate differential diagnosis.  DSM–IV–TR 499 (4th ed. 2000).  Thus, the

19   DSM–IV–TR confirms that plaintiff's pain disorder is a recognized mental disorder, and

20

21          [3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the
     clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC
22   ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).
     A GAF score falls within a particular 10-point range if either the symptom severity or the level
23   of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates
     "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty
24   in social or occupational functioning."  *Id.* at 34.

consultative psychologist Dr. Regets opined that this disorder caused at least some additional impairment in plaintiff's functioning.

The fact that a claimant does not identify a particular mental impairment in a claimant's disability application is not a sufficient reason for failing to consider it at step two. *See Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (rejecting the ALJ's inference that because a claimant failed to allege significant problems related to a particular injury, that injury must not significantly interfere with his functioning).  Plaintiff's allegation in this case is that he is disabled due to pain from a combination of physical impairments, and a pain disorder would certainly impact plaintiff's perception regarding the severity of his pain and his ability to function.

Moreover, Ninth Circuit case law recognizes the existence of pain-based impairments having "both a physical and psychological component." *Lester v. Chater,* 81 F.3d 821, 829–30 (9th Cir. 1996) (discussing a claimant's "acute pain", deemed "chronic pain syndrome" by a medical adviser) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 347 (9th Cir.1991) (en banc) (recognizing that pain is "a completely subjective phenomenon" and that the Commissioner must consider all available evidence in assessing complaints of pain)).  *See also Young v. Heckler,* 803 F.2d 963, 968 (9th Cir. 1986) (stating physician's report was "not conclusive on the issue of the extent to which appellant suffered from chronic pain syndrome on a psychophysiologic basis[,]" and that, while it suggested the diagnosis, "it is not at all clear from the report that appellant suffers from disabling levels of lower back pain.").  As the court stated in *Lester,* "[p]ain merges into and becomes a part of the mental and psychological responses that produce the functional impairments. The components are not neatly separable." *Id.*  In that case, the Ninth Circuit found that because the consequences of the claimant's physical and mental impairments were "so inextricably linked," the Commissioner was

1    required to "consider whether the [ ] impairments taken together result[ed] in limitations equal

2    in severity to those specified by the listings." *Id.* Thus, Ninth Circuit law confirms that the

3    ALJ's failure to acknowledge and discuss plaintiff's pain disorder diagnosis at step two or

4    elsewhere in the decision, in conjunction with plaintiff's various physical impairments,

5    constituted an error.

6              In light of the ALJ's reasons for rejecting plaintiff's credibility and his treating doctor's

7    opinions in this case, the Court is also not persuaded that this error was harmless.  As noted

8    above, Dr. Regets found that plaintiff's responses during his evaluation suggested excessive

9    concern regarding his bodily functions and "it is likely that his physical symptoms are

10   magnified" and health-related concerns occupy a disproportionate amount of his time.  AR at

11   255.[4]  It is therefore highly likely that the ALJ's RFC assessment is less limited than it would

12   be if plaintiff's symptoms explained by a pain disorder were considered. Dkt. 16 at 4.  For

13   example, the ALJ found that plaintiff's physical impairments could reasonably be expected to

14   cause some pain, but discounted plaintiff's credibility because "the objective medical evidence

15   . . . fails to provide strong support for the extent of the symptoms and limitations alleged" by

16   plaintiff due to his pain.  AR at 98.  Similarly, the ALJ rejected the opinions of plaintiff's

17   primary treating physician, Dr. Proano, regarding the degree of limitation plaintiff experiences

18   due to pain in his right shoulder, right arm, ankle, and low back, based primarily upon the lack

19   of sufficient "objective findings" to corroborate plaintiff's statements regarding his pain. As

20   discussed above, plaintiff's pain disorder diagnosis means that plaintiff's experience of his

21

22              [4] Although many of Dr. Regets' mental status examination findings were within normal
23   limits, the ability to maintain eye contact or have adequate interpersonal skills during an
     interview do not demonstrate a lack of limitation due to a pain disorder.  The Court is not
24   persuaded that plaintiff's performance on mental status evaluation somehow contradicts Dr.
     Regets' pain disorder diagnosis.  AR at 96.

physical symptoms is magnified.  The ALJ's failure to consider this diagnosis at step two undermines his other findings.

Accordingly, this case must be REVERSED and remanded for further administrative proceedings so that the ALJ can properly evaluate plaintiff's pain disorder diagnosis at step two, and reassess plaintiff's RFC.

B.    The ALJ Erred in Evaluating the Medical Opinion Evidence

1.    *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2.    *Fernando Proano, M.D.*

Plaintiff's primary treating physician, Fernando Proano, M.D., evaluated plaintiff's ankle and foot in March 2009, AR at 757-59, and began treating his other impairments (such as plaintiff's right shoulder injury) between August 2009 and March 2013. AR at 724-57. Dr. Proano gave multiple opinions during this time period with varying restrictions.

In August 2009, Dr. Proano found that plaintiff would not be able to perform prolonged sitting due to his low back and leg pain. AR at 750-56. Specifically, Dr. Proano had been asked to determine whether plaintiff could perform the job of courier driver in light of his lower back condition, and he opined that plaintiff could not. AR at 756. Dr. Proano

recommended a "sacroiliac belt, stretching, and yoga exercises" to treat plaintiff's back pain. AR at 756.

In October 2009 and March 2010, Dr. Proano concluded that plaintiff would be capable of sedentary or light work. AR at 749 (October 2009 treatment note for persistent right shoulder pain and low back pain reflecting Dr. Proano prescription of anti-inflammatory medication rather than opiates), AR at 748 (March 2010 treatment note for persistent right shoulder pain and low back pain reflecting Dr. Proano's opinion that plaintiff is "capable of sedentary work on a 8-hour per day basis."), AR at 771 (March 2010 activity for showing that plaintiff could frequently sit, stand and walk, and could lift up to 20 lbs. occasionally).[5]  In January 2011, Dr. Proano found that plaintiff would be able to work as a shop estimator or general office clerk, AR at 478, and based upon these opinions, plaintiff began vocational training and attended classes.

However, April 2011 treatment notes from another primary care physician, Dr. Drew, reflected that plaintiff found that sitting at a desk for long periods of time exacerbated his low back pain, and he was experiencing increased anxiety. AR at 453-54.  When plaintiff saw Dr. Proano again in August 2011, he reported that he had dropped some of his classes, and could only keyboard for thirty minutes at a time before experiencing numbness in his hands.  AR at 746.  Dr. Proano indicated that plaintiff may need a keyboard assessment before resuming the vocational training program.  AR at 770.  An evaluation with an occupational therapist, Julia Wirth, OTR, confirmed that plaintiff had pain in his shoulders and neck when working at a computer.  AR at 796-98.  Dr. Proano adopted Ms. Wirth's recommendation that plaintiff use

---

[5] Dr. Proano's opinions from October 2009 and March 2010 are generally consistent with the ALJ's RFC assessment in this case, which limits plaintiff to light work.

REPORT AND RECOMMENDATION - 15

an ergonomic keyboard and chair, a sit/stand work station, and take positional breaks every twenty minutes to improve his "sitting tolerance" in September 2011.  AR at 745, 775.

In December 2011, Dr. Proano requested nerve studies, which were performed in February 2012 and showed ulnar motor neuropathy, consistent with plaintiff's claims of numbness in his hand.  AR at 415.  In addition, Dr. Proano requested a physical capacities evaluation by Ms. Wirth to show how this impairment affected plaintiff's ability to participate in retraining.  AR at 513.  In May 2012, Ms. Wirth concluded that plaintiff had difficulty with tasks requiring dexterity, and sitting for long periods.  AR at 421.  She concluded that he would need to change positions between sitting, standing, and walking on a frequent and regular basis, avoid outward or overheard reaching with his right upper extremity, and is able to lift a maximum of fourteen pounds.  AR at 420-21.  She concluded that he demonstrated the physical capacity for sedentary work.  AR at 421.

From April 2011 through May 2012 when plaintiff was undergoing the nerve studies and physical capacities evaluation, Dr. Proano's opinions indicated that plaintiff could not perform full-time work, or participate in vocational retraining.  AR at 770, 769, 768, 516, 741, 740.  In June 2012, Dr. Proano found that plaintiff was "capable of sedentary work" and should resume retraining program utilizing all the recommended ergonomic equipment and armrests consistent with the recommendations of Ms. Wirth.  AR at 738.  In July 2012, Dr. Proano indicated that plaintiff "still has persistent right shoulder and right upper extremity pain" and "is not involved in a retraining activity at this time," and noted the "occupational therapist recommended that he have the necessary ergonomic equipment available to him when he resumes retraining."  AR at 737.  Dr. Proano recommended another ergonomic assessment by Ms. Wirth.  AR at 737.  In August 2012, Dr. Proano reiterated that plaintiff should pursue

1    retraining after an ergonomic evaluation by Ms. Wirth onsite with the recommended

2    ergonomic equipment.  AR at 735.

3        In September 2012, however, plaintiff reported that the vocational program has been

4    canceled.  Dr. Proano reiterated that plaintiff was still "capable of full time sedentary work,"

5    AR at 734, and in August 2012, Dr. Proano asserted that plaintiff "should continue with

6    vocational services."  AR at 733.  In November 2012, however, Dr. Proano noted that plaintiff

7    was unable to participate in a retraining program because it involved too much keyboarding

8    and was therefore not available to plaintiff.  AR at 732.  Dr. Proano reiterated that plaintiff is

9    limited to sedentary activity with limited ability to use his right upper extremity, including

10   overhead reaching and lifting and carrying beyond ten pounds occasionally.  AR at 732.

11       On December 17, 2012, Dr. Proana determined that the combined effect of plaintiff's

12   industrial shoulder injury, along with his other preexisting conditions, resulted in inability to

13   perform full-time sedentary work.  AR at 725, 731.  Dr. Proana reitered this opinion in

14   January 2013 and February 2013, stating that "I determined that he was not capable of full-

15   time sedentary work and could not perform retraining activities that involve keyboarding."  AR

16   at 728-30.

17       On March 15, 2013, prior to plaintiff's date last insured, Dr. Proano evaluated plaintiff

18   and again opined that he was not capable of full-time sedentary work.  AR at 727.  Dr.

19   Proana's examination found tenderness in plaintiff's proximal biceps and subacromial area as

20   well as the trapezius and levator.  AR at 726.  The range of motion of his shoulder was limited.

21   AR at 726.  Plaintiff could only flex the right shoulder to 137 degrees and extend it to 32

22   degrees.  AR at 726. [6]  Impingement signs were present and he had restricted passive motion in

23   _____

24       [6] Dr. Proana did note that plaintiff was more limited in his range of motion during this
     particular examination due to his pain level, and therefore he concluded that plaintiff's actual

other planes as well.  AR at 726.  His neurologic examination was abnormal, and he had a positive Tinel's sign at the ulnar groove of the right elbow and decreased sensation in the left ring and little fingers to light touch and pinprick.  AR at 726.

Based upon his review of plaintiff's prior medical records and a physical examination, Dr. Proana diagnosed plaintiff with a right shoulder sprain, status post-arthroscopic glenoid debridement and biceps tendon release, preexisting lumbar disc disease, cubital tunnel syndrome in the right upper extremity, and a right little finger injury.  AR at 727.  Dr. Proana opined that plaintiff is "not capable of full-time sedentary work" based upon his right shoulder strain, combined with his other preexisting conditions, and his significant limitations regarding keyboarding and repetitive use of the upper extremity.  AR at 727.  He found that plaintiff could not lift or carry more than ten pounds, could seldom perform overhead reaching, and could not perform overhead lifting.  AR at 727.

The ALJ considered Dr. Proano's 2012 opinions, but indicated that he did not give them weight because "they were based on the claimant's subjective presentation and reports, and are inconsistent with objective findings."  AR at 107.  The ALJ further found that Dr. Proano's opinions "are contradictory and not supported by the minimal objective findings noted in his records or those of other providers, which renders them unreliable."  AR at 107.  In addition, the ALJ found that "Dr. Proano holds himself out as a workers' compensation specialist, and the claimant as referred to the doctor by his attorney, raising the possibility that the doctor acted as an advocate in pursuit of the claimant's worker's compensation claim."  AR at 107.

_____

range of motion was 160 degrees of flexion and abduction and 48 percent of internal rotation. AR at 727.

REPORT AND RECOMMENDATION - 18

1    As a threshold matter, the Court rejects the ALJ's suggestion that the opinions of

2    plaintiff's primary treating physician can be rejected due to the fact that he allegedly "holds

3    himself out as a workers' compensation specialist." As described in great detail above, Dr.

4    Proano treated plaintiff approximately every month. His treatment history shows that Dr.

5    Proano found plaintiff capable of light or sedentary work until objective studies, such as nerve

6    studies and physical capacity testing by an occupational therapist, revealed that plaintiff could

7    not perform such work. It was only after plaintiff's attempts to complete further schooling and

8    vocational retraining failed that Dr. Proano concluded that the combination of plaintiff's

9    impairments rendered him unable to work. Thus, the record in no way supports the ALJ's

10   suggestion that Dr. Proano's opinions were "unreliable" because the doctor was acting as an

11   advocate in pursuit of the claimant's workers' compensation claim. AR at 107. This was not a

12   specific and legitimate reason to reject Dr. Proano's opinions.

13   As discussed above, the ALJ's failure to acknowledge plaintiff's pain disorder

14   diagnosis also undermines his conclusion that Dr. Proano's opinions were "not supported by

15   the minimal objective findings noted in his records." AR at 107. The record shows that

16   plaintiff had an objective diagnosis of ulnar neuropathy with evidence of numbness, tightness

17   in his shoulder muscles, and decreased range of motion. The ALJ failed to adequately explain

18   how these objective findings did not support the upper extremity limitations Dr. Proano

19   assessed. Dr. Proano's opinion was based his review of the physical capacities evaluation and

20   ergonomic report of Ms. Wirth, nerve studies, as well as his own objective findings on physical

21   examination, and not simply on plaintiff's subjective reports. Furthermore, the ALJ failed to

22   discuss Dr. Proana's most recent March 2013 opinion at all. AR at 107-08.

23   Accordingly, the ALJ erred by failing to provide specific and legitimate reasons,

24   supported by substantial evidence, for rejecting Dr. Proano's opinions. On remand, the ALJ

1    shall reassess Dr. Proano's opinions, in light of the direction provided by this Report and

2    Recommendation.

3       C.  The ALJ Erred in Evaluating Plaintiff's Credibility

4       As noted above, credibility determinations are within the province of the ALJ's

5    responsibilities, and will not be disturbed, unless they are not supported by substantial

6    evidence.  A determination of whether to accept a claimant's subjective symptom testimony

7    requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR

8    96-7p.  First, the ALJ must determine whether there is a medically determinable impairment

9    that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R.

10   §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant

11   produces medical evidence of an underlying impairment, the ALJ may not discredit the

12   claimant's testimony as to the severity of symptoms solely because they are unsupported by

13   objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc);

14   *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing

15   that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for

16   rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

17      When evaluating a claimant's credibility, the ALJ must specifically identify what

18   testimony is not credible and what evidence undermines the claimant's complaints; general

19   findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

20   consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

21   inconsistencies in testimony or between testimony and conduct, daily activities, work record,

22   and testimony from physicians and third parties concerning the nature, severity, and effect of

23   the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec.*

24   *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some symptoms prior to the date last insured; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons explained in this decision." AR at 98. The first reason given by the ALJ was the fact that "the objective medical evidence, which contains findings that are consistent with some limitations as reflected in the [RFC] above . . . fails to provide strong support for the extent of the symptoms and limitations alleged." AR at 98. As discussed above, this was not a clear and convincing reason in light of the ALJ's failure to acknowledge or discuss plaintiff's diagnosed pain disorder.

Because this case is being remanded for reconsideration of the medical evidence, and the Court has found that credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue remanded. After re-evaluating the medical evidence, the ALJ should reassess plaintiff's testimony, and provide clear and convincing reasons for rejecting it should such a conclusion be warranted.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **October 18, 2016**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of

REPORT AND RECOMMENDATION - 21

objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 21, 2016**.

      This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

      DATED this 4th day of October, 2016.

JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 22